## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAURA SENNETT,

       Plaintiff,

       v.                              Civil Action No. 12-495 (JEB)

DEPARTMENT OF JUSTICE,

       Defendant.

## MEMORANDUM OPINION

Plaintiff Laura Sennett – a photojournalist who claims a special interest in covering protests, political demonstrations, and "grassroots activism" – submitted a request to the Federal Bureau of Investigation seeking "files, correspondence, or other records concerning [herself]." After a search and review of documents, the agency produced more than 1,000 pages of responsive records but withheld and redacted a number of records pursuant to specific provisions of the Freedom of Information Act and the Privacy Act. Unsatisfied, Plaintiff brought this suit challenging the sufficiency of Defendant's search, as well as the propriety of many of its withholdings. Arguing that it has complied with its obligations, Defendant now moves for summary judgment. Because the Bureau's search was adequate and its withholdings largely proper, the Court will grant Defendant's Motion for the most part.

## I.       Background

There are a number of background facts that appear to be undisputed. In the early morning hours of April 12, 2008, protesters gathered at the Four Seasons Hotel in Georgetown for a demonstration during the International Monetary Fund's annual spring meeting. See Compl., ¶¶ 7-8. Sennett attended with the purpose of photographing the event. See id., ¶ 8.

Following the demonstration and acts of vandalism surrounding it, a warrant to search Sennett's home was obtained, which was executed on September 23, 2008. See Sennett v. United States, 667 F.3d 531, 532-36 (4th Cir. 2012) (describing demonstration and subsequent search). The officers who conducted the search seized "more than 7,000 pictures, two computers, several cameras and other camera equipment." Compl., ¶ 9.

Sennett thereafter submitted the following request to the FBI seeking records related to the search: "This is a request for records under the Privacy Act. I request copies of all files, correspondence, or other records concerning myself. Please search both your automated indices and the older general (manual) indices. To prove my identity, I am enclosing a completed form DOJ-361." Mot., Declaration of David M. Hardy, Exh. A (9/5/2010 Sennett Request). On March 18, 2011, the FBI notified Plaintiff that 280 pages of records had been reviewed and 213 pages were being released in full or in part pursuant to specific provisions of FOIA and the Privacy Act. See Hardy Decl., Exh. B (3/18/2011 FOIA Response). These records were located as a result of a search of the indices to the FBI's Central Records System. See Hardy Decl., ¶¶ 6, 21-22.

Sennett administratively appealed the FBI's determination on the release and withholding of documents, and the agency's decision was subsequently affirmed. See id., Exh. C (3/23/11 Appeal); Exh. E (Decision Affirming Appeal). Sennett then filed this suit on March 30, 2012, alleging violations of FOIA and the Privacy Act. See Complaint, ¶¶ 4, 12-19. Before a briefing schedule was set, Sennett received a letter from the FBI informing her that

> [a]s a result of your litigation, we conducted a new search of the indices to the Central Records System at FBI Headquarters. The FBI identified one "197" file that appears to be responsive to you as it pertains to Civil Action Number 1:10-cv-01055, Laura Sennett v. United States, et al., U.S. District Court for the Eastern District of

> Virginia. A "197" file is categorized as a civil litigation file that contains material concerning the civil action that you lodged against the U.S. government. The FBI does not routinely process 197 files unless the requester specifically requests us to do so because the file contains material sent to and from the plaintiff and/or documents filed before the court.

See Hardy Decl., Exh. F (7/11/2012 FBI Letter). Sennett requested that these documents be produced, and they were released to her on February 28, 2013. See id., Exh. G (7/20/13 Letter Requesting 197 File); Exh. H (2/28/13 FOIA Response). For this second production, 1,695 pages were reviewed, and 1,076 pages were released in full or in part. As with its previous production, the FBI withheld a number of documents, this time pursuant to the Privacy Act, FOIA exemptions, and a sealing Order in a civil case Sennett had filed in the Eastern District of Virginia. See 2/28/13 FOIA Response.

Defendant then filed a Motion for Summary Judgment on June 3, 2013, accompanied by a declaration describing the agency's search efforts and withholdings. See Hardy Decl. The matter is now fully briefed and ripe for decision.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment to a FOIA defendant based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Com. for the Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

III.    Analysis

Defendant maintains that summary judgment is proper because its search was reasonably calculated to return relevant records, it released all reasonably segregable material, and its

withholdings were proper under a number of FOIA exemptions.  See Mot. at 2.  Plaintiff raises

three central challenges in response.  First, Sennett claims that Defendant failed to conduct an

adequate search for responsive records because it did not search its electronic surveillance

indices.  See Opp. at 11.  Second, she asserts that the FBI failed to release reasonably segregable

records.  See id.  And finally, she contends that Defendant improperly withheld multiple records

pursuant to three specific FOIA exemptions.  See id. at 1-11.  Finding that the FBI has

discharged almost all of its responsibilities on those three fronts, the Court will substantially

grant Defendant's Motion.

     A.  Adequacy of Search

     FOIA requires government agencies to describe their searches in enough detail for a court

to determine whether the search was sufficiently exhaustive to satisfy the Act.  Nation Magazine,

Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995); Oglesby v.

U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  "An agency fulfills its obligations under

FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to

uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C.

Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also

Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is

not whether there might exist any other documents possibly responsive to the request, but rather

whether the search for those documents was adequate."  Weisberg v. Dep't of Justice, 745 F.2d

1476, 1485 (D.C. Cir. 1984) (emphasis in original).  The adequacy of an agency's search for

documents requested under FOIA "is judged by a standard of reasonableness and depends, not

surprisingly, upon the facts of each case."  Id.  To meet its burden, the agency may submit

affidavits or declarations that explain the scope and method of its search "in reasonable detail."

Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See id. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

The sole issue Plaintiff raises with respect to the adequacy of the FBI's search is that the Bureau did not look in its electronic surveillance (ELSUR) files for responsive records. See Opp. at 11. Defendant maintains that it was not required to search this source because it was not reasonably likely that the ELSUR indices would contain responsive records. See Reply at 16-18. In so asserting, it provides additional information about the indices and the agency's search, including:

- "The FBI's Electronic Surveillance ('ELSUR') Indices, a separate system of records from the CRS, are used to maintain information on subjects whose electronic and/or voice communications have been intercepted as a result of electronic surveillance conducted by the FBI," Reply, Att. (Second Declaration of David M. Hardy), ¶ 6;

- "The ELSUR Indices are comprised of four types of records: Principal; Proprietary Interest; Intercept; and Reference records," id., ¶ 7 (including sub-paragraphs providing further detail on each type of record); and

- "In responding to FOIA requests, the FBI searches those locations where it determines responsive records are likely to be found. Most FBI cases do not involve electronic surveillance, and so it is not reasonably likely that responsive records will be found in the ELSUR Indices in most instances. Accordingly, the FBI only searches those indices when specifically asked to do so by a requester or when there is some indication that there may be responsive records in the indices, such as when there are references in the investigative file to electronic surveillance."

Id., ¶ 8.

The declaration further explains that there was no reason to search the ELSUR indices here because "Plaintiff did not request that the FBI search the ELSUR Indices for responsive records," id., ¶ 9; "[m]oreover, the FBI did not find any indication in the investigative files containing information responsive to plaintiff's FOIA request that the investigations involved electronic surveillance. The video that plaintiff references in her response is a security video from the Four Seasons Hotel, not a video resulting from electronic surveillance conducted by the FBI." Id., ¶ 10.

Based on the facts here and Defendant's explanation as to why it was unlikely that responsive records would be located in the electronic surveillance indices, the Court finds that the agency's decision not to search this source was reasonable. See Am. Immigration Council v. U.S. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 214-215 (D.D.C. 2012) (agency's explanation sufficient where it had "justifiably conclude[d]" that challenged source probably did not hold responsive records); Salas v. Office of Inspector Gen., 577 F. Supp. 2d 105, 110 (D.D.C. 2008) (acknowledging agency was not required to search every records system and finding search adequate where "declarant adequately explains the agency's reasons for limiting the search to the [specific] database"). A plaintiff's conjecture regarding possible sources that have not been searched is not sufficient to undermine an agency's position that responsive documents would not be contained in a particular database. See Nicholls v. U.S. Office of Personnel Mgmt., 863 F. Supp. 2d 4, 10 (D.D.C. 2012).

Because no other objections remain on this issue, Defendant is entitled to summary judgment on the adequacy of the search.

B.  Segregability

Plaintiff's second objection arises from the Hardy Declaration's purported "fail[ure] to analyze the segregability of the redacted documents, other than in conclusory fashion."  Opp. at 11.  Defendant responds that it is entitled to a presumption of compliance with the segregability requirement and that Plaintiff has failed to provide the "quantum of evidence" necessary to rebut it.  See Reply at 19.  The Court agrees.

While the government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not obviate the government's obligation to carry its evidentiary burden and fully explain its decisions on segregability.  See Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977).  The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released."  Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained nonsegregability of documents with "reasonable specificity").  "Reasonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits."  Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

The Hardy Declaration maintains:

- "Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. No reasonably segregable, nonexempt portions have been withheld from plaintiff. To further describe the information withheld could identify the very material which the FBI seeks to protect," Hardy Decl., ¶ 26;

8

- "The coded, Bates-numbered pages together with this declaration demonstrate that all material withheld is exempt from disclosure pursuant to FOIA exemptions, or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material," id., ¶ 27;

- "The FBI has processed and released all segregable information from documents responsive to plaintiff's FOIA/Privacy Act request that are subject to FOIA, and has properly withheld exempt information pursuant to FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E)," id., ¶ 81; and

- "After extensive review of the documents at issue, I have determined that there is no further reasonably segregable information that can be released without revealing exempt information."

Id.

Although some of this language may appear generic, having reviewed the redacted documents and the Hardy Declaration, the Court finds that no segregability problem exists here. The documents have careful and pinpointed redactions of names, words, clauses, and sentences. While a number of other documents have been withheld in their entirety, there is nothing to suggest that there is material that could have been released on these pages. See, e.g., Mot., Exh. I (FBI's Production of Records in Response to FOIA Request), part I, at 110 (explaining Sennett 1660-1670 were being withheld in their entirety where numerous exemptions applied, including the exemption for pending enforcement proceedings, (7)(A)). The Bureau, moreover, deserves the benefit of the doubt when it has painstakingly segregated material on the produced documents the Court has reviewed. Because the Court finds that the FBI has produced all reasonably segregable materials and a supplemental declaration further addressing the issue of segregability is unnecessary, the Court grants Defendant's Motion on this issue.

C.  Propriety of Defendant's Withholdings

Turning now to the applicability of the exemptions claimed, the Court will begin with some general FOIA law and then discuss each exemption separately.

*1.    Background*

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Nine categories of information are exempt from FOIA's broad rules of disclosure.  5 U.S.C. § 552(b)(1)-(9).  These exemptions are to be narrowly construed, see Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976), and the reviewing court must bear in mind that FOIA mandates a "strong presumption in favor of disclosure."  Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  This Court, accordingly, can compel the release of any records that do not satisfy the requirements of at least one exemption.  See Reporters Com. for Freedom of the Press, 489 U.S. at 755.

FOIA was drafted with the objective of affording the public maximum access to most government records.  See Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973).  The government, as a result, bears the burden of demonstrating that at least one exemption applies.  See id.  In order to assist a court in its *de novo* review of the withholdings and to allow the party seeking access to documents to engage in effective advocacy, the government must furnish "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'"  Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)).  This allows for "as full a public record as possible, concerning the nature of the documents and the

justification for nondisclosure." Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979). Time and again, courts in this Circuit have stressed that the government cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer "far-ranging category definitions for information." King, 830 F.2d at 221; see also Campbell, 164 F.3d at 30 (emphasizing that an agency's explanations will not suffice if they "'are conclusory, merely recit[e] statutory standards, or if they are too vague or sweeping'") (quoting Hayden, 608 F.2d at 1387).

While FOIA's individual exemptions impose their own tailored evidentiary burden, as a starting point, the government must meet five overarching requirements for each withholding. See King, 830 F.2d at 224. The government must:

> (1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories . . . ; and [if the exemption requires a showing of harm] (5) explain how disclosure of the material in question would cause the requisite degree of harm.

Id.

As the D.C. Circuit noted in Lykins v. Dep't of Justice, 725 F.2d 1455 (D.C. Cir. 1984), the government's documentary obligations not only enable the reviewing court to make an informed and accurate determination, but they also allow the adversary system to operate effectively and encourage transparency by "forc[ing] the government to analyze carefully any material withheld." Id. at 1463. Admittedly, this evidentiary burden is likely to create significant costs for government agencies as they respond to FOIA requests; however, "[t]he

costs must be borne . . . if the congressional policy embodied in FOIA is to be well served."

Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 587 (D.C. Cir. 1987).

Against this backdrop, the Court will now consider the specific exemptions challenged by Plaintiff.

### 2. *Challenged Exemptions*

While Defendant relies on numerous exemptions, Plaintiff challenges withholdings pursuant to only three: Exemptions 1 (Classified Information), 3 (Information Protected by Statute), and 7(D) (Confidential Source Information). See Opp. at 1-11. Because Plaintiff raises no objection with respect to the remaining exemptions – namely, Exemptions 5 (Privileged Information), 6 and 7(C) (Clearly Unwarranted Invasion of Privacy and Unwarranted Invasion of Personal Privacy), 7(A) (Pending Enforcement Proceedings), and 7(E) (Law Enforcement Investigative Techniques and Procedures) – the Court will deem any challenges to documents withheld pursuant to those exemptions to be forfeited. See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), aff'd 98 F. App'x 8 (D.C. Cir. 2004).

### a. Exemption 1

Plaintiff begins by attacking the withholding of materials pursuant to Exemption 1. This exemption applies to materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). An agency may invoke Exemption 1 to withhold records "only if it complies with classification procedures

established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification."  King, 830 F.2d at 214; see also Lesar v. Dep't of Justice, 636 F.2d 472, 483 (D.C. Cir. 1980) ("To be classified properly, a document must be classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms.").

While the Hardy Declaration discusses in detail how the FBI complied with the requirements of Exemption 1, see Hardy Decl., ¶¶ 31-39, the Court need not analyze such compliance.  This is because all relevant documents covered by Exemption 1 were also withheld under Exemption 7(E):

> The classified information withheld on Sennett-1622, 1660-1670, and 1676-1682 contains detailed intelligence activity information gathered or compiled by the FBI about a specific individual or organization of national security interest. The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time. This information is properly classified at the "Secret" level, withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to Exemption 1. The FBI also protected this information pursuant to FOIA Exemption 7(E), as discussed *infra*.

Id., ¶ 39 (emphasis added).  Plaintiff does not separately challenge whether the documents were properly redacted or withheld pursuant to Exemption 7(E).  Because there is an independent, unchallenged exemption upon which these few documents could be withheld, the Court will not consider the Exemption 1 challenge.

b.  Exemption 3

Exemption 3 covers records "specifically exempted from disclosure by statute . . . [provided that such statute either] (A)(i) requires that the matters be withheld from the public in

such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Defendant invokes this exemption based on the Pen Register statute, 18 U.S.C. § 3123, and Federal Rule of Criminal Procedure 6(e), which governs grand jury information. Both the statute and the rule leave the Court no discretion.

First, as to pen-register information, the FBI contends that it "properly applied Exemption 3 to withhold the identities and phone numbers of the individuals subject to pen registers in this case, because it is precluded from disclosing such information pursuant to 18 U.S.C. § 3123." See Hardy Decl., ¶ 41; see also id. n.7 (citing specific pages subject to this exemption). The nondisclosure provision of this statute states that

> [a]n order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that (1) the order be sealed until otherwise ordered by the court; and (2) the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached, or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court."

§ 3123(d).

Plaintiff contends that this statute cannot support withholdings pursuant to Exemption 3. See Opp. at 4-7. She offers no authority, however, for such a position, see Opp. at 7, nor does she explain why other district courts have erred in holding the contrary. See, e.g., Brown v. FBI, 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (pen-register information properly withheld under exemption 3); Roberts v. FBI, 845 F. Supp. 2d 96, 101-102 (D.D.C. 2012) (same); Manna v. Dep't of Justice, No. 93-81, 1994 WL 808070, at *6-7 (D.N.J. April 13, 1994) (same).

Even if this statute could protect such information, Plaintiff maintains Defendant should be ordered to produce a more detailed <u>Vaughn</u> declaration explaining whether the pen-register orders in question were under seal and specifying what material was being withheld pursuant to this exemption. <u>See</u> Opp. at 4-7. Both pieces of information, however, have <u>already</u> been set forth by the FBI. The Hardy Declaration clearly states that the pen-register information was "subject to a sealing order by the court." <u>See</u> Hardy Decl., n.7. Additionally, it describes the material being withheld as information that would reveal "the identities and phone numbers of the individuals subject to pen registers in this case." <u>See id.</u> ¶ 41. As the material Plaintiff seeks to have disclosed has already been provided, no supplementation is necessary.

Second, the FBI relies on Federal Rule of Criminal Procedure 6(e), which bars the disclosure of matters occurring before a grand jury. <u>See</u> Fed. R. Crim. P. 6(e)(2)(B). Because it was affirmatively enacted by Congress, Rule 6(e) is recognized as a "statute" for Exemption 3 purposes. <u>See</u> <u>Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv.</u>, 656 F.2d 856, 867 (D.C. Cir. 1981). The Rule's grand-jury-secrecy requirement is applied broadly and embraces any information that "tend[s] to reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." <u>Lopez v. Dep't. of Justice</u>, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (internal quotation marks omitted). In the absence of a statutory exception to the general presumption of grand jury secrecy, Rule 6 is "quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule," and "the rule's ban on disclosure is for FOIA purposes absolute and falls within . . . Exemption 3." <u>Fund for Constitutional Gov't.</u>, 656 F.2d at 868.

Defendant describes the documents withheld under this exemption in the following manner:

> In the investigative files responsive to plaintiffs request, information that reveals matters occurring before a Federal Grand Jury has been withheld pursuant to Exemption 3, in conjunction with Rule 6(e). This information consists of the names of recipients of Federal Grand Jury subpoenas; information that identifies specific records subpoenaed by the Federal Grand Jury; and copies of specific records received in response to Federal Grand Jury subpoenas. Any disclosure of this information would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of the Federal Grand Jury, and thus, the FBI is precluded from disclosing it. Accordingly, the FBI properly withheld this information pursuant to Exemption 3, in conjunction with Rule 6(e).

Hardy Decl., ¶ 42; see also id. n.8 (identifying pages withheld pursuant to this exemption).

Plaintiff contends that "the government did not provide any detail to allow this court to determine whether the specific records at issue in this case would in fact reveal the inner workings of the grand jury," and she urges the Court to conduct an inquiry into whether such a nexus exists. See Opp. at 9. Additionally, Plaintiff maintains that the "special circumstances" exception to grand jury secrecy may require disclosure of these materials, as the information is "undoubtedly of historical interest." See id. at 10. This exception – rooted in the court's inherent supervisory authority over court records – has permitted the release of documents that are of special "historical significance," such as the grand jury testimony of President Richard Nixon. See In re Nichter, No. 12-MC-74, 2013 WL 2544410, at *5-7 (D.D.C. June 11, 2013) (describing exception).

Defendant has supplemented its explanation regarding these documents in the Second Hardy Declaration as follows:

> To clarify, documents obtained by the FBI independent of the grand jury were not withheld pursuant to Exemption 3, in

conjunction with Rule 6(e) of the Federal Rules of Civil Procedure. Rather, to reiterate what I stated in my previous declaration in this case, see Dkt. No. 18 at ¶ 42, the FBI relied on Exemption 3, in conjunction with Rule 6(e), to withhold records that were received in response to a grand jury subpoena because disclosure of such information – as well as the identities of persons and the specific records subpoenaed by the grand jury – would reveal the focus and scope of the grand jury's investigation, thus revealing the inner workings of the grand jury and violating the secrecy of grand jury proceedings.

Id., ¶ 5.

The documents Defendant describes fall squarely within this exemption because they would "tend to reveal some secret aspect of the grand jury's investigation [of] such matters," Senate of Puerto Rico, 823 F.2d at 582 (internal quotation marks omitted), and are not merely "information coincidentally before the grand jury." Fund for Constitutional Gov't, 656 F.2d at 870; see also Light v. Dep't of Justice, No. 12-1660, 2013 WL 3742496, 8 (D.D.C. July 17, 2013) (records subpoenaed by grand jury exempt under Exemption 3); Georgacarakos v. FBI, 908 F. Supp. 2d 176, 182 (D.D.C. 2012) ("information that identifies specific records or evidence subpoenaed by the Federal Grand Jury" protected under Exemption 3); Singh v. FBI, 574 F. Supp. 2d 32, 45 (D.D.C. 2008) (finding records subpoenaed by grand jury were within scope of Exemption 3).

Additionally, the Court rejects Plaintiff's invitation to recognize the "special circumstances" doctrine here, as she has failed to provide the Court with any authority to suggest that the facts in this case implicate that rare exception. See, e.g., In re Nichter, 2013 WL 2544410, at *5-7 (finding special circumstances did not support disclosure of materials related to grand jury proceeding); In re Shepard, 800 F. Supp. 2d 37, 40 (D.D.C. 2011) (cautioning that exception "applies only in exceptional circumstances, requiring a nuanced and fact-intensive assessment," and "is not intended for indiscriminate application").

The Court will thus grant judgment in Defendant's favor as to this exemption.

        c.        Exemption 7(D)

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks omitted).

"[I]t is not enough for the [FBI] to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." Roth v. Dep't of Justice, 642 F.3d 1161, 1184 (D.C. Cir. 2011). The analysis must be more searching. For example,

> [w]hen no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential. These factors include the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed. Even when the FBI contends that a source received an express assurance of confidentiality, it must, in order to permit meaningful judicial review, present sufficient evidence that such an assurance was in fact given.

Id. (citations and internal quotation marks omitted). It is also important to note that, unlike Exemption 7(C), "Exemption 7(D) requires no balancing of public and private interests. If the

FBI's production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the FBI is entitled to withhold the records under Exemption 7(D)." Id. at 1184-85 (citation omitted) (quoting 5 U.S.C. § 552(b)(7)(D)).

The Hardy Declaration acknowledges that there was no express assurance here; instead, it relies on inferred confidentiality. See Hardy Decl., ¶ 70. After describing generally the way in which confidential sources assist the FBI and the need for such sources to remain confidential, see id., ¶¶ 68-69, the Declaration then turns to a more detailed discussion of the specific information withheld here:

> In Category (b)(7)(D)-1, the FBI protected the names, identifying information for, and information provided by third parties under circumstances in which confidentiality can be inferred. These third parties provided information concerning the activities of subjects who were of investigative interest to the FBI or other law enforcement agencies. These third party sources provided specific detailed information that is singular in nature concerning the activities of certain subjects regarding the FBI's investigation. The disclosure of the identities of these sources and the information they provided could have disastrous consequences because disclosure could subject these third parties, as well as their families, to embarrassment, humiliation, and/or physical or mental harm. These third parties provided information of value to the FBI concerning its investigation, and in doing so, have placed themselves in harm's way should their identity and cooperation with the FBI become known. Specifically, in the FBI's experience, sources providing information to the FBI about extremist activities, such as anarchist extremism, do so at great peril to themselves and have faced retaliation and threats (including death threats) when their assistance to the FBI has been publicly disclosed. Under these circumstances, the third parties had reason to believe that their identities and the information they provided would not be publicly revealed by the FBI in response to FOIA or Privacy Act requests. Thus, the FBI implicitly granted these third parties confidentiality with respect to their cooperation in the investigation(s), and properly protected the sources' identities and the information they provided pursuant to Exemption 7(D).

19

Id., ¶ 70.

While recognizing the FBI's concerns in divulging too much information regarding its confidential sources, the Court agrees with Sennett that the details in this description "are so sparse that Plaintiff does not have" sufficient information to challenge whether the circumstances support an inference of confidentiality. See Opp. at 11. While the FBI has explained the character of the crime at issue, it has not provided any information on the other Roth factors. At a minimum, there must be some mention of the source's relation to the crime. See Miller v. Dep't of Justice, 872 F. Supp. 2d 12, 27 (D.D.C. 2012) ("[t]he nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists"). The Court appreciates the importance of protecting confidential sources and does not anticipate that the additional disclosures will be particularly burdensome. That said, the Court cannot sanction the withholdings under Exemption 7(D) as the record now stands. Defendant shall therefore release the documents withheld pursuant to this exemption or file a subsequent summary judgment motion supported by adequate declarations.

D.  Privacy Act

Although the FBI claimed the protection of Privacy Act Exemption j(2) in the documents released to Sennett, this exemption was not, in fact, used to justify the withholding of any information challenged here. See Hardy Decl., ¶ 25 (stating that "the FBI processed documents responsive to her request under the FOIA to achieve maximum disclosure"). Therefore, this Court does not reach the issue of the propriety of the FBI's invocation of Privacy Act Exemption (j)(2).

**IV.      Conclusion**

For the forgoing reasons, the Court will grant Defendant's Motion for Summary

Judgment in substantial part and deny it as to Exemption 7(D) only.  A separate Order consistent

with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  August 27, 2013