UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA SENNETT,

    Plaintiff,

    v.

DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 12-495 (JEB)

## MEMORANDUM OPINION

Plaintiff Laura Sennett is a photojournalist with a special interest in covering protests, political demonstrations, and "grassroots activism." In 2010, Sennett submitted a Freedom of Information Act request to the Federal Bureau of Investigation seeking records containing information about her. After a search and review of documents, the Bureau produced more than 1,600 pages of responsive records but withheld and redacted a number of documents pursuant to specific provisions of FOIA and the Privacy Act. Dissatisfied, Plaintiff brought this suit against the Department of Justice, challenging the sufficiency of the FBI's search, as well as the propriety of many of its withholdings. DOJ responded, in an initial Motion for Summary Judgment, that it had complied with its obligations, and the Court agreed – for the most part. It did, however, conclude that the Government's affidavit had not adequately justified its decision to invoke FOIA Exemption 7(D), which concerns confidential sources, with respect to information on four pages. See Sennett v. Dep't of Justice (Sennett I), 962 F. Supp. 2d 270 (D.D.C. 2013). Defendant has now returned, new-and-improved declaration in hand, again asking for summary judgment. Although that updated statement is somewhat helpful, it is far

1

from enough. As a result, the Court will order that the Government release all of the contested information that it withheld solely under Exemption 7(D).

**I.    Background**

The prior Opinion in this case describes the facts in some detail, so this time around the Court will highlight only those events pertinent to the remaining legal dispute. To wit: Before dawn on April 12, 2008, a group of people gathered at the Four Seasons Hotel in Georgetown to protest the International Monetary Fund's annual meeting. See Compl., ¶¶ 7-8. Plaintiff attended the demonstration with the purpose of photographing the event. See id., ¶ 8. When the gathering devolved into an excuse for petty vandalism, the authorities sought and received a warrant to search Sennett's home, which they did on September 23 of the same year. See Sennett v. United States, 667 F.3d 531, 532-36 (4th Cir. 2012). The search produced "more than 7,000 pictures, two computers, several cameras and other camera equipment." Compl., ¶ 9.

Interested in what else the FBI had on her, Sennett submitted a request to the FBI seeking "copies of all files, correspondence, and other records concerning herself." Second Def. MSJ, Exh. A (Declaration of David M. Hardy) ("Third Hardy Declaration"), ¶ 5. Over the course of the next two years, the FBI released over 1,000 pages of responsive records and withheld some 600 under the Privacy Act and various FOIA exemptions. Sennett, meanwhile, exhausted the available administrative remedies and then filed this lawsuit. See Sennett I, 962 F. Supp. 2d at 275-76. The Court granted Defendant's first Motion for Summary Judgment on nearly all counts but concluded that it could not "sanction the withholdings under [FOIA] Exemption 7(D) as the record . . . st[ood]" because the Government had not adequately justified its decision to withhold parts of four records – Sennett-5, 9-10, and 1688 – under that provision. Id. at 286.

In an attempt to alleviate the Court's concerns, Defendant has filed a beefed-up declaration accompanying a renewed Motion for Summary Judgment. Plaintiff argues in her Opposition and her own Cross-Motion that the new declaration is not enough. Having now also reviewed the four disputed pages that the Court ordered the Government to produce *in camera*, the Court agrees. It will thus deny Defendant's Motion and grant Plaintiff's instead.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In those cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavit or declaration when it describes "the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." ACLU v. Dep't of Def., 628 F.3d 612, 619

(D.C. Cir. 2011). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.　Analysis**

The parties and the Court have significantly narrowed the issues in this case. The FBI has disclosed almost two thousand pages of relevant documents, and in its earlier Opinion the Court ruled in favor of the Government on the adequacy of the search, segregability, and Exemption 3. Plaintiff, for her part, has waived any challenge with respect to Exemptions 1, 6, 7(C), and 7(E). All that remains, then, is Plaintiff's assault on Defendant's decision to withhold a total of three paragraphs, spanning four pages, under Exemption 7(D).

　　A.　FOIA Background

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted), and thereby "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(3); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," the Freedom of Information Act "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure'. . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Nine categories of information, however, are exempt from FOIA's broad rules of disclosure. 5 U.S.C. § 552(b)(1)-(9). These exemptions are to be narrowly construed, see Rose, 425 U.S. at 361, and this Court can compel the release of any records that do not satisfy the requirements of at least one exemption. See Reporters Comm., 489 U.S. at 755.

B. Exemption 7(D)

Exemption 7 authorizes the Government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" meets one of six requirements. 5 U.S.C. § 552(b)(7). The fourth subparagraph – 7(D) – protects from disclosure information that "could reasonably be expected to disclose the identity of a confidential source" and, "in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation, . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1184-85 (D.C. Cir. 2011) (interpreting subsection 7(D)). The policy undergirding this subsection is to protect sources from retaliation or other harm – and thus to encourage them to talk to law-enforcement agencies in the future. Plaintiff does not dispute that disclosure of the disputed documents "could reasonably be expected to disclose . . . the identity

of" FBI sources or information they provided. To prevail, however, Defendant must also show that the sources were confidential.

    1. *Implied Confidentiality*

"'A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" Sennett I, 962 F. Supp. 2d at 284-85 (quoting Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995)). The FBI acknowledges that there was no express assurance of confidentiality here; instead, it argues that a source would have reasonably inferred that the Government intended to keep her identity confidential. See Third Hardy Decl., ¶¶ 68-70.

The Court may infer confidentiality only if "the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." Dep't of Justice v. Landano, 508 U.S. 165, 174 (1993). The FBI may not "claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." Roth, 642 F.3d at 1184 (citing Landano, 508 U.S. at 171, 181). Instead, it must "'point to more narrowly defined circumstances that . . . support the inference'" of confidentiality – that is, evidence that a typical source in these circumstances would have inferred that her information was to remain secret. Id. (quoting Landano, 508 U.S. at 179).

In cases in which no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source would have expected that her communication would remain confidential. Id. (citing Landano, 508 U.S. at 172). Those factors include

> the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the

> source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed.

Id. (citation and internal quotation marks omitted).

To decide whether an inference of confidentiality is reasonable, the Court looks at the facts "from the perspective of an informant, not the law enforcement agency." Billington v. Dep't of Justice, 233 F.3d 581, 585 (D.C. Cir. 2000). In other words, "the focus should always be on whether the source of the information spoke with the understanding of confidentiality," not whether the agency generally considers the source to be confidential. Miller v. Dep't of Justice, 872 F. Supp. 2d 12, 26 (D.D.C. 2012) (citing Landano, 508 U.S. at 172).

### 2. Roth *Factors*

In its first Opinion in this case, the Court observed that "[w]hile the FBI has explained the character of the crime at issue, it has not provided any information on the other Roth factors. At a minimum, there must be some mention of the source's relation to the crime," as "[t]he nature of the crime investigated and [the] informant's relation to it are the most important factors in determining whether implied confidentiality exists." Sennett I, 962 F. Supp. 2d at 286 (internal quotation marks omitted). The Court did not expect that additional requirement to be "particularly burdensome," id., but it apparently is. Indeed, for all of the additional information the FBI provides, it has not shown that, under the circumstances here, its sources would have inferred that their communications with the Bureau would remain confidential.

In discussing the first Roth factor, the Court concluded in Sennett I that "the FBI has explained the character of the crime at issue." Id. That is, the FBI sufficiently explained the nature of the protest and attendant acts of vandalism. The parties argue vociferously over whether such a crime supports an inference of confidentiality or not. But even assuming the

7

Court were to find that the character of the crime supported such an inference, Plaintiff would still succeed, as the other Roth factors – most importantly, the source's relation to the crime and whether the source has an ongoing relationship with the agency – clearly tip in favor of releasing the contested records.

In considering first the source's relation to the crime, the Court looks to see whether the source is a close confederate with inside knowledge, such that disclosure of the information will necessarily implicate the source. This is not the case here, however. With respect to the source mentioned on Sennett-1688, the Hardy Declaration notes only that the source "had attended a meeting of individuals planning to protest the World Bank/IMF fall meetings" in a different year, that "the source was able to provide information to the FBI to . . . [help] identify individuals involved in the 2008 vandalism incident," and that the source's knowledge of those individuals and their activities was "singular in nature." Third Hardy Decl., ¶ 16.

Presumably, these statements are meant to suggest that the source would fear retaliation if the information provided were made public, as he or she could be identified from that information. But the Court cannot simply assume that this is so. This is not a case, for example, where the source was embedded within the criminal organization or could have been identified from the specific inside information she has. Instead, as best the Court can tell, this source was only tangentially related to some people who may – at some point after his or her contact with them – have committed a crime. He or she had done nothing more than attend one planning meeting for a protest some time prior to 2008, and the redacted description of the confidential information, which the Court has reviewed *in camera*, is fairly generic – in fact, it is hardly more specific than the Hardy Declaration's summary. The FBI's account of this source's relationship to the crimes at issue, therefore, cannot support an inference of confidentiality.

8

The Bureau fares no better with regard to the source mentioned on Sennett-5 and 9-10. The Third Hardy Declaration notes that this source was <u>not</u> involved in the 2008 vandalism – a fact that would undermine an inference of confidentiality – but it also states that the source was able to "assist" the FBI in identifying individuals because he or she was "involved, and familiar with, individuals involved in extremist activities in the Washington, D.C. area." <u>Id.</u> The FBI concludes from that observation that "the informants had specific and particular connections to the instant crimes as well as [a] previous meeting where acts of vandalism were discussed." Second Def. MSJ at 11-12. This, however, is a logical step too far, as the Declaration does not explain how the informant's connection to some individuals involved in extremist activities in the District necessarily means that he or she had any connection to these particular people perpetrating this particular crime, as opposed to other "extremists" who pursue some other ideology or agenda in the nation's capital. In these circumstances, the Court simply cannot determine whether the source would have felt the need for – and thus expected – his or her identity to remain confidential, and so, once again, it cannot credit Defendant's protestations to the contrary.

Nor is the Third Hardy Declaration of much help in deciphering whether the sources in question have maintained an ongoing relationship with the FBI. Defendant argues in its Motion that the fact that "the source" – it is not clear to which source this refers – "continues to provide information would suggest that the source does so based on an implied assurance of confidentiality." <u>Id.</u> at 12. If a source continues to speak to the FBI, after all, that could serve as evidence that she expects her identity to remain confidential. Nothing in the record, however, supports the claim that either source has provided any information to the FBI since they helped the Bureau identify the perpetrators of the 2008 Four Seasons vandalism. The Declaration,

instead, merely asserts that the informants provided information to the FBI "over a period of time." Third Hardy Decl., ¶ 16. That "period of time," of course, could include the present, but it might not. The only specific claim in the Declaration is that the sources have provided information relating to the single 2008 incident.

As for any hypothetical ongoing or future relationship, the Declaration expresses nothing more than a desire on the part of the FBI to continue its relationship with the sources, observing that "the FBI intended to maintain their confidentiality, likely to be able to rely on them in the future." Id. That statement is of no use, however, both because it does not claim that the FBI has actually relied on the sources since 2008 and because it is not the FBI's expectations, but rather those of the informants, that matters. See Billington, 233 F.3d at 585. In other words, the agency's desire to obtain information from the informants in the future says nothing about whether the informants expect or intend to provide it. As a result, the Court cannot conclude from the Third Hardy Declaration that the sources either have had or expected to have an ongoing relationship with the FBI.

As to the final two Roth factors – namely, payment of the source and her typical manner of communication with the agency – the government offers neither any information about payment nor any particulars to show that such contacts were or are ever conducted in a surreptitious manner.

In a last-ditch effort to win the Court's favor, Defendant suggests one other factor it deems relevant to this inquiry, noting that the sources are – and, it is implied, were at the outset – "not in the position to testify." Third Hardy Decl., ¶ 16. What, precisely, does this mean? Perhaps Hardy meant to tell the Court that the FBI had promised its sources that it would not seek to call them to testify – it might be reasonable, after all, to infer that a source who knows

10

that she will not be called as a witness expects that her cooperation will remain confidential – but, once again, Defendant's declaration says nothing either way on this point. Hardy's ambiguous description cannot change the outcome here.

The Court is attentive to the FBI's views in relation to informants, as the policy at the heart of Exemption 7(D) is one of source protection and empowerment of law-enforcement agencies. That solicitude, however, can only carry the Court so far. The Bureau has had two chances to explain itself, or at least to say that it could not explain without providing too much detail and risking the disclosure of the very information it seeks to withhold. It did neither. As a result, the Third – and, now, final – Hardy Declaration has failed to provide the Court with the information necessary to support Defendant's Exemption 7(D) claim, so the Court must find in favor of Plaintiff.

## IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's Motion for Summary Judgment and deny Defendant's. As a consequence, it will order the Government to release the information on Sennett-5, 9-10, and 1688 that was withheld only under Exemption 7(D). A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: April 30, 2014